IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CASTURAL THOMPSON                                        PLAINTIFF

    V.                     Civil No. 03-5307

WAL-MART STORES, INC.                                    DEFENDANT

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court for disposition following a four-day trial to the Court beginning on August 23, 2005. The parties were given until September 23, 2005 to submit simultaneous, post-trial briefs and until October 3, 2005 to file a reply. These briefs, as well as the evidence and testimony submitted at trial, has been considered by the Court.

Plaintiff Castural Thompson brought this action against Wal-Mart pursuant to 42 U.S.C. § 1981. Plaintiff claims that Wal-Mart violated his rights by unlawfully discriminating against him because of his race. Wal-Mart denies that Plaintiff's race had anything to do with its decision to demote Plaintiff. The only hint of anything racial in the trial was testimony from Plaintiff that his supervisor, Mike Huffaker, requested that Plaintiff handle all issues involving African-American employees. Mr. Huffaker denied the allegation and nothing further was presented that indicated any racial animus on the part of Wal-Mart. The following will constitute the

-1-

Court's findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

**Findings of Fact**

During the trial, the following facts were established by the evidence:

1.  Plaintiff is an African-American.
2.  Plaintiff was employed by Wal-Mart in various positions since 1979 to include an Assistant Store Manager, Store Manager, District Manager, Regional Manager and Regional Vice-president. As a Regional Vice-president, Plaintiff was an officer of Wal-Mart.
3.  Plaintiff has spent his entire career with Wal-Mart, and it is undisputed that he has been and remains a valued employee.
4.  In 1998, Plaintiff's immediate supervisor was changed from Larry Williams to Mike Huffaker. Immediately prior to this change, Mr. Williams provided Plaintiff with favorable performance evaluations.
5.  As Regional Vice-president under Larry Williams, Plaintiff was assigned to a territory that encompassed northern New York, eastern and western Pennsylvania, Ohio and parts of West Virginia. Plaintiff supervised approximately eighty-five (85) stores and twelve District Managers.

AO72A
(Rev. 8/82)

6. As Regional Vice-president under Mike Huffaker, Plaintiff was assigned to a territory that encompassed southern New York, New York City, Rhode Island, New Jersey and Connecticut. In this territory, Plaintiff had six District Managers who were not performing up to company standards. Despite being transferred to a territory with stores riddled with performance and employee problems, Plaintiff was able to bring about marked improvement in this territory.

7. Despite Plaintiff's success in his new territory under Mr. Huffaker, it is clear that a personality conflict existed between Plaintiff and Mr. Huffaker. However, nothing in the testimony or evidence presented at trial would lead a reasonable factfinder to believe that any conflict existed due to Plaintiff's race.

8. Wal-Mart has a corporate policy referred to at trial as the "Open Door". (Defendant's Exhibit 22). The Open Door policy provides an avenue for associates[1] to address any problems or concerns with any supervisor, including Senior Management. The Open Door policy provides that any supervisor who suppresses the Open Door or retaliates against an associate for using the Open Door has engaged

---

[1] Wal-Mart refers to its employees as associates.

in misconduct and may be disciplined, to include termination.

9. In 2000, Tom Coughlin, then President of Wal-Mart Stores Division, received an Open Door complaint regarding Plaintiff from one of the District Managers under Plaintiff's supervision. Mr. Coughlin requested that Charlyn Jarrells Porter, Vice President of Wal-Mart Stores People Division and Labor Relations conduct an investigation.

10. As a result of her investigation, Ms. Porter concluded that Plaintiff was exhibiting undesirable leadership tactics and was responsible for rehiring Store Manager Ron Jackson. Mr. Jackson was previously terminated from Wal-Mart for fraternization and time card fraud which was an integrity violation. Wal-Mart policy dictates that an employee who is terminated for an integrity violation is not eligible for rehire with the company.

11. Wal-Mart policy defines fraternization as any romantic involvement between a supervisor and an associate he or she supervises or whose terms and conditions of employment he or she may have the ability to influence. (Wal-Mart's Exhibit 25). An integrity violation is considered gross misconduct for which an employee is subject to immediate

-4-

AO72A
(Rev. 8/82)

termination. (Wal-Mart's Exhibit 23). Some examples include: theft of company time, theft, dishonesty/compromised integrity and fraud. *Id.*

12. Ms. Porter shared the results of her investigation with Mr. Coughlin, Don Harris, then Executive Vice President of Operations of Wal-Mart Stores Division and Mr. Huffaker.

13. On October 6, 2000, Ms. Porter, Mr. Huffaker and Mr. Harris met with Plaintiff to discuss the results of the investigation. At that time, Plaintiff did not challenge Ms. Porter's finding that he rehired Ron Jackson with the knowledge that Jackson had committed an integrity violation and was not eligible for rehire. After this meeting, Mr. Harris decided to recommend to Mr. Coughlin that Plaintiff be demoted from his position as Regional Vice President and officer of the company.

14. On October 27, 2000, Mr. Coughlin, Mr. Huffaker, Mr. Harris and Ms. Porter again met with Plaintiff regarding the results of the investigation. Plaintiff again did not refute the allegation that he rehired Ron Jackson.

15. On November 1, 2000, Mr. Coughlin, Mr. Huffaker, Mr. Harris and Ms. Porter provided Plaintiff with a Coaching for Improvement Form. The form outlined that the reasons for demoting Plaintiff were leadership issues and rehiring Ron

AO72A
(Rev. 8/82)

Jackson. Plaintiff responded to the form in writing on November 3, 2000, but yet again did not refute the allegation that he rehired Ron Jackson. The plaintiff made no claim of race discrimination at that time.

16. Plaintiff was demoted for the rehiring of Ron Jackson who had admitted fraternization with an associate he supervised as well as time card fraud, an integrity violation.

## Conclusions of Law

1. Title 42, Section 1981 of the United States Code creates an independent cause of action against private employers for racial discrimination. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989). We analyze Section 1981 claims in the same manner as Title VII disparate treatment claims. *Davis v. KARK-TV, Inc.*, 421 F.3d 699 (8th Cir. 2005).

2. In order to prevail on the issue of liability for race discrimination, Plaintiff must establish a prima facie case by showing that he (1) is a member of a racial minority, (2) was qualified for his position, and (3) suffered an adverse employment action under circumstances permitting an inference that the action was the result of unlawful discrimination. *Johnson v. Ready Mixed Concrete Co.*, 2005 WL 2333836 (8th Cir. Sept. 26, 2005). The burden of

production then shifts to Wal-Mart to articulate a legitimate, non-discriminatory reason for the adverse employment action, in this case, a demotion. *Id.* If Wal-Mart satisfies this burden, Plaintiff must show that Wal-Mart's reason is a pretext for intentional discrimination. *Id.* Plaintiff always bears the burden of proving that the adverse employment action was motivated by a discriminatory animus. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

3. This Court concludes that Mr. Thompson has failed to establish a prima facie case of racial discrimination against Wal-Mart, because he failed to show that he was meeting Wal-Mart's legitimate expectations, and even if, meeting Wal-Mart's legitimate expectations, Wal-Mart's proffered reasons for demoting him are legitimate and non-discriminatory. Plaintiff was demoted from his position as Regional Vice-president and officer of Wal-Mart because he improperly rehired Ron Jackson and was exhibiting undesirable leadership tactics, and thus, failed to meet

Wal-Mart's legitimate expectations. There was obviously a personality conflict and communication difficulties between Mr. Huffaker and Plaintiff although their offices were within a few feet of each other.

4. Plaintiff contends that the reasons offered by Wal-Mart are pretextual because they are factually incorrect. Plaintiff must show that not only was Wal-Mart incorrect in its conclusion that Plaintiff was responsible for rehiring Ron Jackson, but that Wal-Mart did not believe that he did so. *See Johnson, supra.* Even if Wal-Mart had no "solid proof" that Plaintiff rehired Ron Jackson or was mistaken in believing Plaintiff had rehired Jackson, such mistake does not automatically prove that Wal-Mart was motivated by unlawful discrimination. *See Johnson v. AT&T Corp.*, 422 F.3d 756 (8th Cir. 2005). While the Court believes there was sufficient evidence presented at trial to determine that Plaintiff was responsible for rehiring Mr. Jackson despite the integrity violation, that finding is not necessary to support the Court's decision that Plaintiff has failed to make a prima facie case of racial discrimination. The Court finds that Wal-Mart was motivated in a good faith belief that Plaintiff rehired Ron Jackson knowing that he had committed an integrity

AO72A
(Rev. 8/82)

violation and thus, was not eligible for rehire. Therefore, Wal-Mart was not motivated by Plaintiff's race and any proof that Wal-Mart reached the wrong conclusion about Jackson's rehire is wholly inadequate to prove Plaintiff's claim of racial discrimination. *Id*.

5. Plaintiff also contends the circumstances surrounding his demotion give rise to an inference of discrimination as similarly situated employees, who are not African-American, were treated differently. Plaintiff's argument fails as these other employees must be "similarly situated in all respects" meaning the individuals used as comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *See Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845 (8th Cir. 2005).

6. Employment decisions that are unfair or can even be considered the result of poor business judgment are not actionable under Title VII. *See Hill v. St. Louis Univ.*, 123 F.3d 1114 (8th Cir. 1997). While better cooperation and communication between supervisors and those being supervised would be desirable, such failure does not establish a cause of action under Title VII.

7. Federal courts do not sit as a super-personnel department

that reexamines an entity's business decisions. *See Harvey v. Anheuser Busch, Inc.*, 38 F.3d 968 (8th Cir. 1994). As the Court has already stated, it is undisputed that Plaintiff has been and remains a valued employee of Wal-Mart. The Court has carefully examined and re-examined the evidence and can only conclude that Wal-Mart's decision to demote Plaintiff was not motivated in any sense by Plaintiff's race.

## Order

Based upon the foregoing, the Court concludes that Plaintiff has failed to prove by a preponderance of the evidence his claim for race discrimination. Accordingly, judgment is for the defendant, and Plaintiff's claim should be and hereby is DISMISSED WITH PREJUDICE, with all parties to bear their own fees and costs.

IT IS SO ORDERED this 7th day of October 2005.

/s/ Robert T. Dawson
Robert T. Dawson
United States District Judge

.